# EXHIBIT 5

on. iffany M. artwright

NI ED A E DI RI R
F R E E ERN DI RI F A IN N
A A MA

| | |
|---|---|
| ANN LED , a single woman. | No. 3:24 cv 0 0 M |
| laintiffs, | |
| v. | **THESIS DEFENDANTS' SECOND MOTION TO COMPEL ARBITRATION** |
| LIER , IN . d b a E I , E I N R I , FIND MY F RM LA, and F RM LA , a Delaware orporation DANIEL FREED, individually MA R IN, individually RAND N RA E I AL , IN . d b a RAND N RA , a New York orporation RAND A A IN R , IN . d b a RAND N RA E I AL , a New York orporation and ohn and ane Does 1 . Defendants. | N E N M I N ALENDAR: April 1 , 202 |
| Defendants. | |

## INTRODUCTION

Defendants utliers, Inc. hesis , Daniel Freed, and Matthew Rubin collectively,

hesis Defendants renew their motion to compel arbitration. he ourt should grant the

motion and send laintiff oann LeDou s claims against them to arbitration for the following

reasons:

E I DEFENDAN E ND
M IN M E LA R I RA I N
No. 3:24 cv 0 0 M age 1

M R Y ALL RA N LL
1001 Fannin treet, uite 20
ouston, e as 002
1 2 4 1

- hen LeDou bought her hesis subscription, hesis s website re uired customers to accept certain terms and conditions erms by clicking a check bo before making a purchase.

- he erms governed customers use of hesis s website and services and applied to all product purchases.

- he erms mandate arbitration of a ny controversy or claim arising out of or relating to this contract, or breach thereof.

- LeDou bought a monthly subscription of hesis products from hesis s website and made at least eight purchases of hesis s products.

- y doing so, LeDou had to affirmatively accept hesis s erms, meaning that she agreed to arbitrate disputes arising from her subscription purchase.

- LeDou s claims against the hesis Defendants fall within the arbitration agreement s broad scope, as they flow from her use of hesis s website and online transactions.

- Freed and Rubin may invoke the arbitration agreement pursuant to agency and estoppel principles.[1]

ecause LeDou agreed to arbitration, the ourt should enforce that agreement and compel arbitration.

## BACKGROUND[2]

### A. Factual Background

hesis sells nootropic supplements designed to support cognitive health. In March 2021, customers could buy hesis s products online at https: findmyformula.com. *See* Declaration of Daniel Freed Freed Decl. , . At that time, hesis used arthook Inc. s web based checkout technology to process online orders. *Id.* . hesis s checkout page displayed a prominent purchase button. *Id.* *see also,* Declaration of Maranda Lujajohnson Lujajohnson Decl. *cf.* Declaration of ameer Anand Anand Decl.

---

[1] In addition to re moving to compel arbitration, the hesis Defendants have also moved to dismiss under Federal Rules of ivil rocedure 12 b 2 and 12 b . For purposes of judicial economy, the hesis Defendants respectfully re uest that the ourt consider first the arguments made in the motion to dismiss about personal jurisdiction, second this motion to compel arbitration, and finally the remainder of the motion to dismiss.

[2] his motion adds all emphasis and omits internal uotation marks and citations in uoted materials unless otherwise indicated.

E I DEFENDAN E ND
M I N M E LA R I RA I N
No. 3:24 cv 0 0 M age 2

M R Y ALL RA N LL
1001 Fannin treet, uite 20
ouston, e as 002
1 2 4 1

stating that the same button existed on Thesis's checkout page in July 2021). A checkbox was located just above the purchase button. Freed Decl., ___; Lujajohnson Decl., ___. The checkbox was followed by text to the effect of: "I have read and agree to the Terms and Conditions and Medical Disclaimer." Freed Decl., ___; Lujajohnson Decl., ___. The terms were hyperlinked to that text. Freed Decl., ___; Lujajohnson Decl., ___. By clicking the hyperlink, a customer could view the Terms' entire text before clicking the purchase button. Freed Decl., ___; Lujajohnson Decl., ___. It was not possible to purchase a subscription of Thesis products on Thesis's website unless the customer first clicked the checkbox agreeing to the Terms before pressing the purchase button. *See* Lujajohnson Decl., ___; *cf.* Anand Decl., ___, ¶ 11 (same, up to July 2021). Indeed, the purchase option was "grayed out," so the checkout could not proceed unless the customer first affirmatively checked the box agreeing to Thesis's Terms. Lujajohnson Decl., ___. Thesis removed the checkbox from its checkout page after July 2021, *see* Anand Decl., ¶ 10, underscoring its presence in March 2021, when LeDoux purchased her subscription, Lujajohnson Decl., ___.

The Terms—which relate to customers' use of Thesis's websites and services, as well as their purchases of Thesis's products—constitute a binding written agreement between Thesis and the customer clicking the checkbox. *See* Freed Decl., Ex. A at 1. Relevant here, the Terms mandate "binding arbitration . . . in the Southern District of New York" for "a[ny] controversy or claim arising out of or relating to this contract, or breach thereof":

**DISPUTE RESOLUTION AND CHOICE OF LAW**

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. The arbitration hearing shall take place in the Southern District of New York, before a single arbitrator. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

Further, you agree that any issue or dispute arising out of or in connection with your use of our site, intellectual property, the Terms, or any matter

EXHIBITS DEFENDANTS' ___ AND ___
MOTION ___ TO ___ MELA ARBITRATION
No. 3:24-cv-0___0___-M ___ Page 3

MORGAN, LEWIS & BOCKIUS LLP
1001 Fannin Street, Suite 2000
Houston, Texas 77002
+1 ___ 2 ___ 4 ___ 1

concerning ompany shall be governed by the laws of the nited tates and the tate of New York with venue in the outhern District of New York.

*Id.* at .

LeDou an Army nurse who was stationed in ashington during 2021, Dkt. 3 at 3 bought a subscription of hesis products from hesis s website in March of that year, *e.g.*, Dkt. 4 ANN LED decided to purchase a subscription from E I for her supposedly individuali ed packets of Formula Nootropic upplements. Dkt. 2 at , . LeDou allegedly consumed the hesis products that she ordered.

hat fall, during a routine Army drug screening, LeDou tested positive for amphetamines. *Id.* he was court martialed but ultimately ac uitted. Dkt. 4 131. till, LeDou alleges that the Army is administratively separating her from military service. *Id.* 12 . he blames Defendants for her Army and personal difficulties.

**B. Procedural History**

LeDou sued. Dkt. 1. he asserts negligence, unfair trade practices, failure to warn, design and manufacturing defect, breach of warranty, and misrepresentation and fraud. Dkt. 4 144 1 . he rand Nutra Defendants alleged manufacturers of the supplements at issue moved to dismiss, Dkt. 24, while the hesis Defendants moved to compel arbitration, Dkt. 14.

he ourt granted the motion to dismiss in part and denied the motion to compel arbitration without prejudice. Dkt. 3 at 33 *LeDoux v. Outliers, Inc.*, 202 L 23 0 .D. ash. Feb. 1 , 202 . In denying arbitration, the ourt concluded that the hesis Defendants had not shown that it was more likely than not that LeDou clicked a bo assenting to hesis s erms. Dkt. 3 at 1 . he ourt also discounted an affidavit that the hesis Defendants submitted with their reply but authori ed them to re urge arbitration. *Id.* at 1 , 20 21.

he hesis Defendants now file this second motion to compel arbitration and respectfully ask the ourt to compel arbitration in accordance with hesis s erms.

E I DEFENDAN E ND
M I N M E L AR I RA I N
No. 3:24 cv 0 0 M age 4

M R Y ALL RA N LL
1001 Fannin treet, uite 20
ouston, e as 002
1 2 4 1

# LEGAL STANDARD

nder the Federal Arbitration Act, a party seeking to compel arbitration has the burden to show 1 the e istence of a valid, written agreement to arbitrate and, if it e ists, 2 that the agreement to arbitrate encompasses the dispute at issue. *Showalter v. Apartment Mgmt. Consultants, LLC*, F. upp. 3d , 2024 L 4 122, at 2 .D. ash. ct. 24, 2024 artwright, . .

As to the former, the ourt must make the threshold determination that a valid contract was formed before ordering arbitration. *Id.* ourts apply state contract law to determine whether the parties formed a valid agreement to arbitrate. *Id.* Either New York or ashington law applies. *LeDoux*, 202 L 23 0 , at . ut because there is no conflict in those states laws regarding contract formation, *Bennett v. T-Mobile USA, Inc.*, 2024 L 22 0, at .D. ash. an. 22, 2024 , the hesis Defendants proceed under ashington law. As the parties seeking to compel arbitration, the hesis Defendants bear the burden of proving the e istence of the arbitration agreement by a preponderance of the evidence. *LeDoux*, 202 L 23 0 , at .

As to the second in uiry, f ederal substantive law governs the scope of an arbitration agreement. *Shivkov v. Artex Risk Sols., Inc.*, 4 F.3d 10 1, 10 th ir. 2020 . If a contract contains an arbitration clause, there is a presumption that the dispute is arbitrable. *Lagrone v. Advanced Call Ctr. Techs., LLC*, 2014 L 4 3 , at 4 .D. ash. ct. 2, 2014 . In that case, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* he complaint s factual allegations guide the analysis. *Simula, Inc. v. Autoliv, Inc.*, 1 F.3d 1 , 21 th ir. 1 . hen, as here, the arbitration agreement is broad, the factual allegations need only touch matters covered by the arbitration agreement. *Id.*

E I DEFENDAN E ND
M IN M EL AR IRA I N
No. 3:24 cv 0 0 M age

M R Y ALL RA N LL
1001 Fannin treet, uite 20
ouston, e as 002
1 2 4 1

# ARGUMENT

**A.     LeDoux necessarily clicked the check box, forming a binding arbitration agreement.**

A website operator s terms of use are an enforceable contract if:   1  the website provides reasonably conspicuous notice of the terms to which the consumer will be bound and  2  the consumer takes some action, such as clicking a button or checking a bo , that unambiguously manifests his or her assent to those terms.  *LeDoux*, 202    L  23 0 , at

 uoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th  4 ,      th  ir. 2022  .

 he  ourt correctly identified the second prong as  the center of this dispute, *LeDoux*, 202    L  23 0 , at    , and on that point, the facts are straightforward:

- LeDou  bought a subscription of  hesis s products online in March 2021. *E.g.*, Dkt. 2  at   Dkt. 4  0.

- At that time, completing a purchase re uired checking a bo  agreeing to  hesis s  erms. *See* Lujajohnson Decl.    .

-  hat is, in March 2021, it was impossible for a customer to purchase a  hesis subscription without having first checked the bo  at issue. *Id.  cf.* Anand Decl.  11  same for  uly 2021 until  hesis removed the check bo  .

 hus, LeDou  had to  and did  click a bo  agreeing to  hesis s  erms, which included binding arbitration. *See* Lujajohnson Decl.,    E . A at  .

As for notice, the check bo  was prominently placed above the grayed out purchase button. Freed Decl.,    Lujajohnson Decl.,   .  he accompanying te t made clear that the customer had read and agreed to the  erms, which were linked for easy access. Freed Decl.,    Lujajohnson Decl.,   .

Accordingly, LeDou  assented to  hesis s terms and had reasonable notice of them.  he  ourt should therefore hold that the  erms are an enforceable contract between LeDou  and  hesis.

E I DEFENDAN   E  ND
M I N    M E LA R I RA I N
No. 3:24 cv 0  0   M   age

M  R  Y  ALL  RA  N LL
1001 Fannin  treet,  uite  20
 ouston,  e as    002
   1  2  4 1

**B.  Defendants Freed and Rubin may enforce the arbitration agreement under agency and estoppel principles.**

A litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement. *All for Kidz, Inc. v. Around the World Yoyo Entm't Co.*, 2014 WL 10 21, at 2 (W.D. Wash. May , 2014). Under Washington law, employee defendants sued for acts within the scope of their employment may defensively invoke their employer's agreement to arbitrate disputes encompassing those acts. *Id.*

Here, LeDoux's complaint treats Freed, Rubin, and Thesis as a single entity. *See, e.g.*, Dkt. 4 at 20 ("The WEBI DEFENDANTS misrepresented that the product has no serious adverse health effects in their branding and marketing."). LeDoux thus fails to allege a single relevant fact specific to either individual.[3] The only conclusion, then, is that whatever Freed and Rubin allegedly did—which, again, is unclear due to the complaint's improper group pleading[4]—they did within the scope of their agency. Bolstering that conclusion is the absence of any allegations that either Freed or Rubin acted in a personal (and not a Thesis) capacity. As a result, both individuals may invoke the arbitration agreement as Thesis agents. *All for Kidz*, at 2 4 *see also Letizia v. Prudential Bache Secs., Inc.*, 02 F.2d 11 , 11 th ir. 1   federal law .

Freed and Rubin are likewise entitled to enforce the arbitration agreement pursuant to e uitable estoppel. Under that doctrine, a nonsignatory may enforce an arbitration agreement when: 1 the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory, and 2 the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying

---

[3] LeDoux alleges that she was deceived and not warned about the product, which she also alleges was negligently designed and negligently manufactured. None of the few facts that LeDoux alleges about Freed and Rubin relate to those issues. Dkt. 4 at 2 2 complaining about Freed and Rubin s court martial testimony, which took place long after the facts underlying her claims .

[4] Because of LeDoux's group pleading, nothing in the complaint suggests that Freed or Rubin knew of, personally participated in, or otherwise had any involvement in the alleged misconduct.

WEBI DEFENDAN E ND
M IN MEL AR IRA IN
No. 3:24 cv 0 0 M age

M R Y ALL RA NLL
1001 Fannin treet, uite 20
ouston, e as 002
1 2 4 1

agreement. *Schmidt v. Samsung Elecs. Am., Inc.*, 201  L 22 03 , at   .D.  ash. May 2 , 201   collecting cases  *cf. McLeod v. Ford Motor Co.*, 200   L 3  33 4, at  4 .D.  al. Apr. 14, 200      hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.   federal law . Again, LeDou   repeatedly treats Freed and Rubin as interchangeable with   hesis, satisfying the test s first prong.   he second prong is also met because LeDou  s claims arise from her use of   hesis s website, which is governed by the contract containing the arbitration agreement. *E.g.*, Dkt. 4   at 23  LeDou   alleging that she bought   hesis products from the   hesis website, and that she did so after taking an online   ui  located on the website   *id.* at 24  LeDou   alleging that at   least one of the packets contained ingredients that were not disclosed on    E I s website which advertised the list of ingredients in its  product  . Moreover, the   erms disclaim warranties, caution against relying on product descriptions, and warn that information on   hesis s website  is for informational use only and should not be construed as medical advice    provisions that go to the merits of LeDou  s claims.

he   ourt should authori e Freed and Rubin to enforce the arbitration agreement.

**C.    LeDoux's claims fall squarely within the arbitration agreement's broad scope.**

he arbitration provision encompasses   a ny controversy or claim arising out of or relating to this contract  the   erms , or the breach thereof.  *See* Freed Decl., E . A at   .  he   erms relate to LeDou  s use of   hesis s website, as well as her purchases of   hesis s products, *id.* at 1  and all of her claims flow from those events, *e.g.*, Dkt. 4    1,  0,   , 12 . At the very least, LeDou  s factual allegations   touch matters   covered by the arbitration agreement, entitling the   hesis Defendants to arbitrate all of LeDou  s claims.

E I DEFENDAN    E  ND
M   N    M  EL AR I RA I N
No. 3:24 cv 0  0   M   age

M  R   Y   ALL  RA  N LL
1001 Fannin   treet,  uite  20
ouston,  e as   002
1  2 4 1

**CONCLUSION**

he ourt should: 1 grant the hesis Defendants motion, 2 compel LeDou s claims against them to arbitration, and 3 stay this case pending arbitration.

*The undersigned counsel certify that this memorandum contains 2,413 words, in compliance with the Local Civil Rules.*

DA ED: March 1 , 202 .

**MURPHY BALL STRATTON LLP**

y: */s/ Richard Houghton*
Richard oughton     ar No. 24121
  admitted *pro hac vice*
Michelle tratton     ar No. 240 0
  admitted *pro hac vice*
 hristian Mc uire     ar No. 3 334
  admitted *pro hac vice*
1001 Fannin treet, uite 20
  ouston, e as 002
  hone: 13 4
mstratton mbssmartlaw.com
rhoughton mbssmartlaw.com
cmcguire mbssmartlaw.com

**ARETE LAW GROUP PLLC**

y: */s/ Jeremy Roller*
eremy E. Roller, A No. 32021
 00 niversity treet, uite 2420
 eattle, A 101
 hone: 20 42 32 0
Fa : 20 42 32 1
jroller aretelaw.com

*Attorneys for Defendants Outliers, Inc.,
Daniel Freed, and Matt Rubin*

E I DEFENDAN E ND
M N M EL AR I RA I N
No. 3:24 cv 0 0 M age

M R Y ALL RA N LL
1001 Fannin treet, uite 20
ouston, e as 002
1 2 4 1